T.C. Memo. 1997-529

UNITED STATES TAX COURT

BOBBY E. SYPHRETT AND JANICE D. SYPHRETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16340-95.                    Filed November 24, 1997.

<u>David C. Allie</u> and <u>Walter B. Thurmond</u>, for petitioners.

<u>Richard T. Cummings</u>, for respondent.


MEMORANDUM OPINION

LARO, <u>Judge</u>:  The parties submitted this case to the Court
without trial.  See Rule 122.  Petitioners petitioned the Court
to redetermine respondent's determination of a $126,510
deficiency in their 1989 Federal income tax.  Following certain
concessions by petitioners, we must decide whether their 1989

gross income includes certain proceeds that they received in settlement of a lawsuit. We hold it does. Section references are to the Internal Revenue Code in effect for 1989. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## Background

All facts have been stipulated.[1] The stipulated facts and exhibits submitted therewith are incorporated herein by this reference. When they petitioned the Court, petitioners resided in The Woodlands, Texas.

From 1982 through 1990, Bobby E. Syphrett was president, sole shareholder, and sole employee of a Texas corporation named Intrastate Gas Gathering, Inc. (Intrastate). Intrastate's principal business activity was gas transmission.

In approximately 1980, Mr. Syphrett and Intrastate planned with Jack R. Wiewall to develop five gas-gathering projects (the projects). The projects contemplated the construction of pipeline systems and related plant to collect natural gas from producing properties and transport it to large pipelines for shipment to major distribution centers. Mr. Wiewall's role was

---

[1] Petitioners ask the Court to find as facts certain allegations that were made in pleadings in two State court actions. We decline to do so. The record does not reveal whether the opposing parties in those actions admitted or denied these allegations, and the record does not otherwise allow us to determine independently the validity of these allegations.

to manage construction of the pipelines and related plant. Mr. Syphrett's role was to secure contracts (the Contracts) with the owners of gas-producing properties. The legal work related to the projects was handled by W. Michael Stephens and his law firm of Baker, Brown, Sharman, Wise & Stephens (Baker, Brown).

All of the projects were to be organized in the same way. Each project would be organized as a limited partnership and financed by selling limited partnership interests. After the limited partnership interests in a project had been sold, Mr. Syphrett would assign the related Contracts to the limited partnership. Intrastate would then obtain an interest in the limited partnership and become a partner.

By 1981, three of the projects had been completed to the point where limited partnerships were organized and interests therein sold; the remaining two projects were in the process of being formed. In or about 1981, Mr. Syphrett learned that Mr. Wiewall had allegedly been submitting false and inflated construction invoices for one or more of the projects. When Mr. Syphrett objected to Mr. Wiewall's alleged overcharging of costs, Mr. Stephens allegedly drafted legal documents regarding the two uncompleted projects so as to exclude Mr. Syphrett and Intrastate from participation. At that time, Mr. Syphrett had assigned all but two of the Contracts to a limited partnership or partnerships.

In 1982, Mr. Syphrett and Intrastate (collectively, the plaintiffs), as coplaintiffs, sued Mr. Wiewall in the District Court of Harris County, Texas, seeking return of the plaintiffs' interests in various limited partnerships (the Wiewall litigation). The law firm of Bonham, Carrington & Fox represented the plaintiffs in the Wiewall litigation. In 1983, the plaintiffs, as coplaintiffs, sued Mr. Stephens and Baker, Brown in a separate suit in the same court (the Stephens litigation), seeking damages of at least $4.15 million and an award of exemplary or punitive damages. Larry Doherty and his law firm of Doherty & Williamson, P.C., represented the plaintiffs in the Stephens litigation.

The plaintiffs entered into a written agreement (the Letter Agreement) dated January 10, 1989, that "[set] out * * * [their] understanding" regarding the Wiewall litigation and the Stephens litigation. The Letter Agreement stated that the plaintiffs

hereby covenant and agree as follows:

1) Syphrett has been determined to be the client in the * * * [Stephens litigation] and is entitled to receive the benefits, if any, derived from such case. Intrastate shall not seek nor receive any benefits from said case.

2) Intrastate shall receive the benefits, if any, derived from the * * * [Wiewall litigation]. Syphrett shall not seek nor receive any benefits from said case.

3) Syphrett, if successful in the * * * [Stephens litigation], shall pay to Intrastate a fee equal to the legal cost including Salary and other fees paid by Intrastate as of the date of this agreement. Syphrett

shall pay all expenses in the * * * [Stephens litigation] and Intrastate shall pay the expenses in the * * * [Wiewall litigation] as of the date written above.

The Letter Agreement was signed by Mr. Syphrett, in his individual capacity, and by Mrs. Syphrett in her capacity as Intrastate's vice president.

The Stephens litigation was settled on February 28, 1989, for $1.5 million; after subtracting Mr. Doherty's attorney's fees and expenses of $413,375, the net recovery was $1,086,625 (the Net Settlement Proceeds). On the same day, Mr. Doherty's office issued a check to the plaintiffs in the amount of the Net Settlement Proceeds. Mr. Syphrett deposited this check in petitioners' personal bank account.

A Full Release and Agreement (Release) entered into on February 28, 1989, in connection with the settlement of the Stephens litigation was signed by Mr. Syphrett, both in his individual capacity and in his capacity as Intrastate's president. As part of the Release, the plaintiffs assigned to the liability insurance carrier of Mr. Stephens and Baker, Brown a 50-percent interest in the claims, causes of action, and recoveries, up to a maximum of $1.5 million, in the Wiewall litigation.

Intrastate sent Mr. Syphrett the following three invoices totaling $497,667:

| Date/<br>Year 1989 | Amount | Period |
|---|---|---|
| Aug. 3 | $197,500 | 7/81 through 6/83 |
| Sept. 23 | 200,167 | 7/83 through 6/87 |
| Nov. 5 | 100,000 | 7/87 through 6/89 |

Mr. Syphrett paid Intrastate the total amount of these invoices through a series of checks dated August 28, September 1, September 5, September 7, October 30, and December 27, 1989. Four of these checks were drawn on Mr. Syphrett's financial management account at Shearson Lehman Hutton (Shearson). One of these checks was drawn on petitioners' personal account at First Interstate Bank of Texas, N.A. (First Bank). The final check was a bank check purchased by Mr. Syphrett at the First Gibraltar Bank, FSB (First Gibraltar). A summary of these checks is as follows:

| Date of the Check/<br>Year 1989 | Amount | Drawer |
|---|---|---|
| Aug. 28 | $52,500 | Shearson |
| Sept. 1 | 45,000 | Shearson |
| Sept. 5 | 50,000 | Shearson |
| Sept. 7 | 50,000 | Shearson |
| Oct. 30 | 200,167 | First Bank |
| Dec. 27 | 100,000 | First Gibraltar |
| | 497,667 | |

Intrastate reported its receipt of the $497,667 as gross income on its tax return for its taxable year ended June 30, 1990. Intrastate deducted on that return legal fees totaling $419,765 and reported that it had no tax liability. Intrastate's

tax return for the prior year also reported no tax liability; the return showed a net loss of $67,570.

Petitioners' 1989 tax return, as originally filed, reported that they had no taxable income and no tax liability. On a schedule attached to that return, petitioners listed the following information in support of $586,325 that they included as other income, and that they offset by a $383,073 net operating loss:

```
          Lawsuit settlement:
          Gross proceeds.................... $1,500,000
               Less legal fees.............     413,675
               Less reimbursements.........    ¹500,000
               Net other income............     586,325
```

¹Petitioners concede that they incorrectly deducted $2,333 more than they actually paid to Intrastate as "Reimbursements".

Intrastate paid all legal fees as they were incurred, and it deducted these fees on its tax returns for the years in which the fees were paid. Intrastate deducted all salary and other compensation paid to Mr. Syphrett, along with related employment taxes, on its tax returns for the years in which these amounts were paid.

The parties to the Wiewall litigation moved to dismiss that case on December 13, 1990, with prejudice to their rights to refile any claim, counterclaim, or any part thereof. In connection with this dismissal, Intrastate recovered all of the Contracts, and Mr. Syphrett received nothing.

Petitioners are subject to the alternative minimum tax for 1989.

## Discussion

Petitioners argue primarily that the proceeds from the Stephens litigation were to be shared between Mr. Syphrett and Intrastate, and that Mr. Syphrett transferred the $497,667 to Intrastate to effectuate a "global allocation" of the proceeds of the Stephens litigation and the Wiewall litigation. Petitioners argue alternatively that Mr. Syphrett paid the $497,667 to Intrastate to reimburse it for the following amounts that it paid during and in connection with the Stephens litigation: $112,245 for legal fees to attorneys other than Mr. Doherty, $349,072 for part of Mr. Syphrett's salary and related payroll taxes, and $36,350 for miscellaneous expenses. Petitioners conclude with respect to their alternative argument that they may deduct the $497,667 amount as: (1) An ordinary and necessary expense in carrying on Mr. Syphrett's trade or business as an employee of Intrastate, see sec. 162, or (2) an expense for the production or collection of income, or the management, conservation, or maintenance of property held for the production of income, see sec. 212.

Respondent counters that all of the settlement proceeds belonged to petitioners, and that they transferred the $497,667 amount to Intrastate in an attempt to shelter this amount from

taxation by use of large deductions that were available to Intrastate. Respondent also argues, with respect to petitioners' alternative argument, that neither section 162 nor section 212 lets petitioners deduct the $497,667 amount.

Turning first to petitioners' primary argument, we agree with respondent. Our detailed review of the record persuades us that petitioners' 1989 gross income includes the full amount of the Net Settlement Proceeds. We look to petitioners' outward manifestations with respect to these proceeds, and we see that they received these proceeds on February 28, 1989, without any restricted use. Petitioners deposited the check into their personal account, and they used the proceeds for several months before transferring any money to Intrastate. Petitioners transferred the money to Intrastate in several installments that extended over a period of 4 months, rather than through a lump sum at or near the date of settlement, and the first installment was carefully crafted to fall within Intrastate's taxable year beginning July 1, 1989. If part of the settlement proceeds belonged to Intrastate, as petitioners contend, it was entitled to its share immediately upon settlement. Yet, petitioners controlled all the proceeds, even investing at least $197,500 of the Net Settlement Proceeds in their personal brokerage account, exposing this amount to the same risks as their personal investments.

Our reading of the Letter Agreement further supports our conclusion, as does petitioners' reporting of the settlement proceeds on their 1989 tax return.  The first paragraph of the Letter Agreement states clearly that Mr. Syphrett, who is described as "the client" in the Stephens litigations, would receive all of the benefits from the Stephens litigation, and that Intrastate would receive none of the benefits from that suit.  Petitioners' 1989 tax return reports the full amount of the settlement as gross proceeds.  These documents, which evidence petitioners' intent and understanding at the time of the events with the events, support the inclusion of the full amount of the settlement proceeds in their gross income.

We hold for respondent on the first issue.  In so holding, we need not decide petitioners' alternative argument that they may deduct the amount that Mr. Syphrett transferred to Intrastate under either section 162 as an employee business expense or section 212.  Even if we were to side with petitioners on this second issue, which we do not intend to do, petitioners could only deduct the $497,667 amount only as a miscellaneous itemized deduction, see secs. 62(a)(2)(A) and 67, and they would receive no benefit from such a deduction in 1989 because they are subject to the alternative minimum tax, see sec. 56(b)(1)(A)(i).  Alexander v. Commissioner, T.C. Memo. 1995-51, affd. 72 F.3d 938, 946-947 (1st Cir. 1995).

We have considered all arguments by petitioners for holdings contrary to those expressed herein, and, to the extent not addressed above, find them to be irrelevant or without merit. To reflect the foregoing,

<u>Decision will be entered for respondent</u>.